# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOSHUA TOUSIGNANT and | ) | |
| HEATHER WELSCH, individually and on | ) | |
| behalf of all those similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civ. A. No. 1:18-cv-10439-RGS |
| v. | ) | |
| | ) | |
| SCHNEIDER ELECTRIC USA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' ASSENTED-TO MOTION
## FOR PRELIMINARY SETTLEMENT APPROVAL

Plaintiffs Joshua Tousignant and Heather Welsch, on behalf of themselves and all others similarly situated, and Defendant Schneider Electric USA, Inc., have reached an agreement to settle this action on a class basis. Taking into consideration the merits of the parties' dispute, the procedural posture of the case, the parties' knowledge of the facts and law relevant to the issues presented, and the risk and uncertainty of further litigation, the parties submit that the proposed settlement is a fair, reasonable, and adequate result for the settlement class. Accordingly, Plaintiffs now respectfully request that the Court:

1. authorize Plaintiffs to file their proposed Third Amended Class and Collective Action Complaint, in the form attached hereto as Exhibit 1;

2. grant preliminary approval of the proposed settlement;

3. preliminarily certify the proposed settlement class pursuant to 29 U.S.C. § 216(b) and Federal Rule of Civil Procedure 23;

4. approve the parties' proposed form of notice and notice process, and authorize the parties to issue notice to the settlement class; and

5.      schedule a final fairness and approval hearing for a date no sooner than 120 days from the date of preliminary approval.

A proposed order incorporating these terms is included with this motion as Exhibit 4. In addition, a copy of the parties' settlement agreement is included as Exhibit 2, and a copy of the parties' proposed form of notice is included as Exhibit 3.

### Background

**1.      Case background.**

Plaintiffs filed this action on March 7, 2018, alleging that Defendant had violated the Fair Labor Standards Act, 29 U.S.C. § 207, by failing to pay overtime wages to their warehouse associates. Specifically, Plaintiffs alleged that Defendant's time keeping system improperly rounded the warehouse associates' clock-in and clock-out times by up to 15 minutes, so that they were not compensated for all hours worked in excess of 40 hours per week. Plaintiffs brought this claim on a collective basis on behalf of all warehouse associates employed by Defendant nationwide. Defendant denied – and continues to deny – Plaintiffs' allegations.

In April 2018, Defendant filed a motion to dismiss Plaintiffs' original complaint. At that time, Defendant also filed a motion to transfer venue from the District of Massachusetts to the Eastern District of Texas. Plaintiffs opposed those motions. On April 24, 2018, this Court granted Defendant's motion to dismiss but denied the motion to transfer. *See* docket no. 17. Plaintiffs then filed an amended complaint, in response to which Defendant filed an answer and a renewed motion to transfer. On May 25, 2018, this Court denied that renewed motion. *See* docket no. 25. Finally, on December 10, 2018, Plaintiffs filed the operative second amended complaint, in response to which Defendant filed on answer on December 18, 2018.

Shortly thereafter, the parties began discussing the possibility of settling this matter on a class basis. At the parties' request, the Court agreed to stay this case until April 1, 2019, so that

they could pursue settlement negotiations, including a private mediation that they had arranged to take place on March 28, 2018. In anticipation of that mediation, Defendant confidentially produced payroll and timekeeping records for the putative collective action members to Plaintiffs' counsel. On March 28, 2018, the parties engaged a full day mediation with D. Charles Stohler. The proposed settlement is a direct result of that mediation.

**2.    Overview of the settlement terms.**

**i.    Scope of the proposed settlement class.**

The parties have agreed to settle this action on behalf of all individuals who have been employed by Defendant in the United States as distribution warehouse associates during the period February 20, 2016 through March 28, 2019. The parties' agreement provides that all members of that proposed class will automatically receive a settlement payment unless they elect to "opt out" of the settlement following receipt of the proposed notice.

**ii.    Monetary terms of the settlement.[1]**

Defendant has agreed to pay [REDACTED] to fully and finally resolve this action on behalf of the proposed settlement class. From that amount, the parties' agreement allocates up to one-third [REDACTED] to Plaintiffs' counsel for their fees and costs; up to [REDACTED] as incentive awards to the two named plaintiffs and a third individual who provided substantial assistance during the course of the litigation[2]; and the costs of retaining an independent third-party company to administer the settlement (estimated at about [REDACTED]). The remaining

---

[1] The terms of the parties' settlement agreement are confidential. Consistent with the Court's Order dated June 4, 2019, Plaintiffs are filing, under seal, an un-redacted version of this Motion, a copy of the settlement agreement, and the proposed Notice of Class Action Settlement for the Court's *in camera* review.

[2] Specifically, Joshua Tousignant and Heather Welsch will receive [REDACTED]and [REDACTED], respectively, and the third individual, Dennis Clarke, will receive [REDACTED].

proceeds of the settlement fund (estimated at about [REDACTED]) will be paid to all members of the proposed settlement class who do not opt out.

Individual payments to the proposed settlement class members will be calculated using a formula [REDACTED].

### iii.    Scope of the release.

The parties' agreement provides that all proposed settlement class members who have not timely opted out of the settlement will be deemed to have released and discharged Defendant from any and all claims that were asserted or could have been asserted in the litigation based upon the same facts alleged in the Complaint, including all claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, all similar wage and hour claims, and claims for breach of contract, retaliation, unpaid or underpaid employee expense reimbursement, unjust enrichment arising under the laws of the states of California, Pennsylvania, or Texas; and any and all derivative claims relating to unpaid wages or minimum wage compensation from the period beginning on February 20, 2016 and ending on March 28, 2019. The complete terms of this release are set forth in the parties' agreement. It will be included in the notice issued to the proposed settlement class members and on the settlement checks they receive.

### iv.    Proposed notice process and final approval schedule.

Assuming the Court grants preliminary approval, the parties will retain a third-party company to administer and oversee the notice process, including issuing notice, following up on undeliverable mail, ensuring correct contact information for the proposed settlement class members, setting up and maintaining a qualified settlement account, distributing settlement checks, and processing tax withholdings. The parties propose to issue notice by first-class mail to all settlement class members using contact information provided by Defendant. The parties'

proposed form of notice describes the claims and allegations in this case; the terms of the

proposed settlement (including the scope of the release and the proposed allocations for

attorneys' fees and costs, incentive awards, and administration costs); the method for opting out

or submitting an objection; and will inform the proposed settlement class members about the date

and time of the final approval hearing once that date is set by the Court. As noted, the proposed

settlement class members will not be required to take any action to receive a payment from the

settlement fund, although settlement class members will have 30 days from the date that notice is

issued to submit an opt-out request or an objection. The parties seek to have the final approval

hearing held on a date no sooner than 120 days after preliminary approval, consistent with the

requirements of the Class Action Fairness Act, 28 U.S.C. § 1715.

**<u>Argument</u>**

**1.     The parties' proposed plan for notice is fair, reasonable, and adequate.**

The parties' proposed form of notice describes in plain terms the claims and allegations

in this case; the terms and legal consequences of the settlement; the proposed allocation of

settlement funds; and the deadlines and method for submitting opt-out requests and objections.

The notice will also identify the date, time, and location of the final approval hearing, should any

settlement class member wish to attend. The parties plan to issue notice by first-class mail to the

last known address of each class member using contact information supplied by Defendant, with

the settlement administrator following up on undeliverable notices by searching for updated

contact information. Settlement class members will have 30 days from the date of notice to opt-

out of or object to the proposed settlement, and will not be required to take any action (i.e.

submit a claim form) in order to receive payment from the settlement fund.

This notice process is fair and reasonable. The proposed notice "contain[s] enough information about the settlement and its implications for participants to enable class members to make an informed decision about whether to be heard concerning the settlement." 2 McLaughlin on Class Actions § 6:17 (10th ed.) (collecting cases). Notice by first-class mail to the last known address of each class member is widely regarded as the best practicable means of disseminating information about a class settlement. *See id.* ("courts have consistently held that first-class mail addressed to class members' last known address … [is] sufficient to satisfy the notice requirements") (collecting cases); *see also In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 218 (D. Me. 2003) ("individualized notice by first-class mail ordinarily satisfies the requirement that class members receive the best notice practicable under the circumstances"). Accordingly, Plaintiffs submit that the proposed notice and plan for issuing notice is fair and reasonable, and should be approved.

## 2.    The Court should certify the proposed settlement class.

Approval of a class settlement requires the Court to certify a class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *In re Lupron Marketing & Sales Prac. Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004). Here, the parties have stipulated to the certification of a single settlement class for purposes of both the Fair Labor Standards Act, 29 U.S.C. § 216(b), and Federal Rule of Civil Procedure 23.[3] As previously noted, that

---

[3] In order to facilitate certification of that settlement class, Plaintiffs propose to amend their complaint in the form attached as Exhibit 1 to include related claims under the laws of California, Pennsylvania, and Texas. Thus, while their extant FLSA claims may be certified on an "opt in" class basis under 29 U.S.C. § 216(b), their forthcoming state law claims must be certified on an "opt out" basis under Federal Rule of Civil Procedure 23. Significantly, courts routinely certify such "hybrid" actions, i.e., actions that present both opt-out Rule 23 claims and opt-in FLSA claims. *See, e.g., Homer v. Del Frisco's of Boston, LLC*, Case No. 1:15-cv-13958, docket no. 60 (D. Mass. Nov. 13, 2017); *Scott v. Aetna Services, Inc.*, 210 F.R.D. 261, 264-268 (D. Conn. 2002); *McCormick v. Festiva Dev. Group, LLC*, 2010 WL 582218, at *8 (D. Me. Feb. 11, 2010); *Colozzi v. St.*

settlement class is defined as all individuals who have been employed by Defendant in the United States as distribution warehouse associates during the period February 20, 2016 through March 28, 2019. Plaintiffs submit that this class satisfies the requirements for class and collective action certification under section 216(b) and Rule 23.

> **i.    The settlement class members are similarly situated for purposes of the FLSA.**

In order to preliminarily certify the proposed settlement class under the FLSA, the Court must determine that the settlement class members are "similarly situated." 29 U.S.C. § 216(b). There is no standard test for determining whether a group of employees are "similarly situated." "Generally … courts have found that 'similarly situated' employees have similar (not identical) job duties and pay provisions … and are 'victims of a common policy or plan that violated the law'." *Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 363 (D. Me. 2010), *quoting Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1260 (11th Cir. 2008), *and Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006). The proposed settlement class is undoubtedly satisfies this standard. The proposed settlement class members all worked in the same position, for the same Defendant, were paid in a similar manner, and had their hours tracked using the same timekeeping system which allegedly affected them in the same manner – that is, by "rounding" their clock-in and clock-out times by up to 15 minutes. That alleged practice resulted in a consistent alleged violation of the FLSA. Thus, the proposed settlement class satisfies the requirements for certification under the FLSA.

---

*Joseph's Hosp. Health Center*, 275 F.R.D. 75, 91 (N.D.N.Y. 2011); *Brickey v. Dolencorp, Inc.*, 244 F.R.D. 176, 179 (W.D.N.Y. 2007) ("Rule 23 and FLSA actions are routinely prosecuted together, and the complexities of Rule 23 and FLSA hybrid actions are a challenge that the federal judiciary, and properly instructed juries, are generally well-equipped to meet").

### ii.      The settlement class satisfies Federal Rule 23.

"A true 'settlement class' arises when the named parties to an uncertified class action reach a provisional settlement that they wish to make binding on the class as a whole. In those cases, the parties move the court for simultaneous class certification and approval of the settlement." 2 McLaughlin on Class Actions § 6:3 (12th ed.), *quoting Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317 (S.D. N.Y. 2005). In such circumstances, courts require that the party seeking class certification demonstrate that the proposed settlement class satisfies the requirements of Rule 23, with some exceptions. *See id.* (collecting cases). For example, courts need not inquire into whether the case would be manageable to try on a class basis, since a settlement class will axiomatically never go to trial. *See id.*[4]

The proposed settlement class now before the Court readily satisfies the requirements of Rule 23. Per that rule, class certification is appropriate when: (1) the class is so numerous that joinder of all members is impractical (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the class (typicality); (4) the representative parties will fairly and adequately protect the interests of the class (adequacy); (5) questions of law or fact common to the members of the class predominate over questions affecting individual members

---

[4] *See also In re American Int'l Group, Inc. Secs. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012) ("In the context of a settlement class, concerns about whether individual issues would create 'intractable management problems' at trial drop out of the predominance analysis because 'the proposal is that there be no trial'"), *quoting Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618-619 (1997); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 335, 81 Fed. R. Serv. 2d 580 (3d Cir. 2011) (Scirica, J., concurring) ("[S]ome inquiries essential to litigation class certification are no longer problematic in the settlement context. A key question in a litigation class action is manageability – how the case will or can be tried, and whether there are questions of fact or law that are capable of common proof. But the settlement class presents no management problems because the case will not be tried").

(predominance); and (6) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy (superiority). Fed. R. Civ. P. 23(a), (b)(3).

*First*, the proposed settlement class consists of about 826 people, a number far too large for practicable joinder. *Second*, the proposed settlement class presents common questions of law and fact, in that it challenges a common timekeeping practice to which all members were subject. *Third*, the named plaintiffs' claims are typical; each worked as a warehouse associate for Defendant during the statutory period, and each was subjected to the same allegedly unlawful timekeeping practice. *Fourth*, the named plaintiffs and the undersigned counsel will fairly and adequately represent the proposed settlement class. The named plaintiffs present no conflicts of interest with the class – quite the opposite, in fact, since they have diligently represented the proposed class members' interests in an effort to achieve a monetary recovery on their behalf. Likewise, Plaintiffs' counsel is experienced and competent in this sort of litigation, and are well-versed in matters pertaining to class wage and hour violations. *See supra* at 14. *Fifth*, common questions predominate over individual concerns because the proposed settlement class coheres a uniform challenge to a common time keeping practice. That practice defines the settlement class, and a determination as to the legality of that practice would commonly decide liability for every settlement class member. *See* 2 McLaughlin on Class Actions § 6:3; *see also Amchem*, 521 U.S. at 623 (predominance focuses on "whether proposed classes are sufficiently cohesive to warrant adjudication by representation"). *Sixth*, and finally, certification of the proposed settlement class is superior to the alternatives, which would be to limit recovery only to those individuals who are willing or able to come forward and join the action on an individual basis, or deny recovery to the putative class entirely.

3.    **The Court should grant preliminary approval of the proposed class settlement.**

a.    **The proposed settlement is fair, reasonable, and adequate.**

Compromise is the favored outcome in nearly any lawsuit. Newberg on Class Actions, §11:41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy"); *see also E.E.O.C. v. Astra U.S.A., Inc.*, 94 F.3d 73 8, 744 (1st Cir. 1996) ("We do not doubt that public policy strongly favors encouraging voluntary settlement" of class claims). The advantages to the parties and the courts are particularly apparent in the compromise of class actions, which are "often complex, drawn out proceedings demanding a large share of finite judicial resources." *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993); *see also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("In the class action context in particular, 'there is an overriding public interest in favor of settlement,' [which] minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources").

Before a class settlement may be effectuated, it must be approved by the Court. Approval typically occurs in a two-step process. *See* Manual for Complex Litigation, Fourth, § 13.14 at 172-173. The first step is preliminary approval. At that stage, the "judge reviews the [proposed settlement] … to determine whether it is sufficient to warrant public notice and hearing." *Id.* In making that determination, the Court must find that the settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e); *see also Durrett v. Housing Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990). This is only a threshold determination, however: "[a]t the preliminary approval stage, the Court need not make a final determination regarding the fairness, reasonableness and adequateness of a proposed settlement; rather, the

Court need only determine whether it falls within the range of possible approval." *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 140 (D.P.R. 2010).

A "strong initial presumption" of fairness arises where the parties can show that the "settlement was reached after arms-length negotiations, that the proponents' attorneys have experience in similar cases, that there has been sufficient discovery to enable counsel to act intelligently, and that the number of objectors or their relative interest is small." *Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000); *see also City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F. 3d 1041, 1043 (1st Cir. 1996). "[T]here is no single test in the First Circuit for determining the fairness, reasonableness and adequacy of a proposed class action settlement." *In re Relafen Antitrust Litigation*, 231 F.R.D. 52, 71-72 (D. Mass. 2005) (internal quotations omitted). Nonetheless, courts in Massachusetts generally assess a proposed class settlement based on the following factors: (1) the complexity, expense, and duration of litigation, if the agreement is denied; (2) the amount of the proposed settlement compared to the amount at issue; (3) reaction of the class to the settlement; (4) the stage of proceedings and the amount of discovery completed; (5) the plaintiffs' likelihood of success on the merits; (6) whether the agreement provides benefits which the plaintiffs could not achieve through litigation; (7) good faith dealings and absence of collusion; (8) the settlement's terms and conditions. *See*, *e.g.*, *Rolland v. Patrick*, 562 F. Supp. 2d 176 (D. Mass. 2008); *In re Relafen*, 231 F.R.D. at 72; *In re Lupron Mktg. & Sales Practices Litigation*, 228 F.R.D. 75, 93 (D. Mass. 2005); *Celluci*, 191 F.R.D. at 8-9; M. *Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822-833 (D. Mass. 1987).

With the exception of the third factor, all of these requirements are satisfied here.[5] *First*, denying approval would result in lengthy and protracted litigation, including full-blown fact discovery (and potentially expert discovery), briefing on class certification, dispositive briefing under Rule 56, and ultimately trial to the extent the Court denies summary judgment. Should the Court certify a class or collective in this matter, the parties would also need to issue notice to over 800 individuals advising them of their rights and affording them the opportunity to either opt into or out of the case. Based on counsel's experience, litigation of this variety can take years, consume substantial judicial time and resources, and result in both sides incurring significant fees and expenses.

*Second*, Plaintiffs sincerely believe that the value of the settlement is fair and reasonable given the various challenges they faced in establishing liability, obtaining class or collective action certification, and proving damages. The settlement will afford substantial monetary recovery to the settlement class members in amounts that counsel believes are fairly proportional to their potential damages, taking into account the legal and factual risks that continued litigation would entail – including, most notably, the risk that the Court could deny class or collective action certification or rule that Defendant's timekeeping practices did not violate the law. Plaintiffs thus submit that the gross settlement amount is fair and reasonable. *See In re Lupron*, 345 F. Supp. 2d at 138 (finding proposed settlement warranted preliminary approval because, *inter alia*, "the proposed settlement amount is sufficiently within the range of reasonableness").

*Third*, Plaintiffs' counsel conducted a thorough investigation into the claims and allegations in these cases, including reviewing payroll data and timekeeping information

---

[5] The reaction of the settlement class cannot be assessed because notice has not issued, so class members have not yet had the opportunity to learn about the settlement.

produced to them on a confidential basis by Defendant as part of their mediation and negotiation process. In addition, Plaintiffs' counsel interviewed putative class members concerning their experiences working as warehouse associates for Defendant, and both sides submitted substantive statements to the mediator explaining their respective positions. Based on this investigation and their candid discussions with both Defendant and the mediator, Plaintiffs' counsel was able to reach a comprehensive understanding of the potential strengths and weaknesses of their case. The proposed settlement and its associated terms are a direct result of that understanding.

*Fourth*, Plaintiffs believe that they had a substantial likelihood of success on the merits, but acknowledge that the claims in this case presented a genuine hurdle to recovery for many of the putative settlement class members. In addition, Plaintiffs' counsel were cognizant that Defendant has all along intended to vigorously defend the claims in these cases, including demonstrating that Plaintiffs (and the class) were paid for all hours worked, and challenging any effort by Plaintiffs to seek class or collective action certification. Thus, while Plaintiffs believe that their case had real merit, they also recognize that future litigation was not without substantial risk.

*Fifth*, the proposed settlement would, if approved, provide the settlement class members with the opportunity to recover appreciable monetary sums, while avoiding the risk, expense, and delay in protracted litigation. Indeed, absent the proposed settlement, and in the event that the Court denied class or collective action certification, each settlement class member may be required to litigate his or her claims an individual basis. By contrast, the proposed settlement affords all such individuals the chance to receive a lump sum payment proportional to their potential damages without the burden of legal process.

*Sixth*, the proposed settlement was reached in good faith, after extensive arm's length negotiations, without any collusion between the parties. As already discussed, the parties in this matter were only able to achieve this proposed settlement after retaining an independent mediator, negotiating directly, and participating in a full-day mediation. Both sides are well represented by experienced and seasoned counsel.[6] Plaintiffs' counsel take very seriously their obligations when it comes to resolving wage disputes on a class basis. They would never agree to a proposed settlement that they did not believe was a fair and reasonable result for the putative class.

*Seventh*, and finally, the terms of the proposed settlement are within the range of reasonable settlements that courts have consistently approved. The proposed settlement provides a common fund for the payment of all claims on a basis that is proportional to the class members' estimated damages. Courts have consistently treated settlements adopting similar terms as fair and reasonable. *See*, *e.g.*, *In re Relafen*, 231 F.R.D. at 65-66, 71-72; *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 333-335 (D. Mass. 2015). As discussed in more detail below, the settlement's terms concerning the incentive awards and allocation for attorneys' fees are also fair and reasonable, and well in keeping with applicable precedent concerning class settlements.

---

[6] Plaintiffs are represented by Sergei Lemberg of Lemberg Law L.L.C. and Hillary Schwab of Fair Work P.C. Attorney Lemberg is an experienced class action litigator. *See Butto v. Collecto, Inc.*, 290 F.R.D. 372, 395-396 (E.D.N.Y. 2013) (finding Attorney Lemberg has "ample experience to serve as counsel" for a certified consumer class action); *Munday v. Navy Federal Credit Union*, 2016 WL 7655807, at *9 (C.D. Cal. Sept. 15, 2016) (describing Attorney Lemberg as competent class counsel, having "extensive experience" litigating consumer class actions). Attorney Schwab has likewise successfully litigated and resolved dozens of cases involving claims for unpaid wages and overtime. *See Dvornikov v. Landry's, Inc.*, 2017 WL 1217110, at *10 (D. Mass. Mar. 31, 2017) (describing Attorney Schwab as "clearly qualified, experienced, and able to undertake this [class] litigation"); *Overka v. American Airlines, Inc.*, 265 F.R.D. 14, 19 (D. Mass. 2010) (describing plaintiffs' counsel, including Attorney Schwab, as "well qualified and experienced in class actions on behalf of employees in the service industry").

### b.     The proposed settlement's provision for incentive awards is fair and reasonable.

The parties' settlement agreement allocates [REDACTED] as incentive awards for the two plaintiffs and a third individual who provided substantial assistance during the course of the litigation. These awards would be paid in addition to whatever sum these individuals may recover from the settlement fund. Those awards are fair and reasonable, and should be preliminarily approved.

*First*, this case and proposed settlement would have been impossible without the three individuals who not only pursued these cases on a class basis but assisted counsel in its prosecution. *See In re Relafen*, 231 F.R.D. at 82 (awarding incentive payments of between $9,000 and $18,000 to named plaintiffs; "[i]ncentive awards are recognized as serving an important function in promoting class action settlements, particularly [where] … the named plaintiffs participated actively in the litigation"); *In re Compact Disc Minimum Advertised Price Antitrust Litigation*, 292 F. Supp. 2d 184, 189 (D. Mass. 2003) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit"); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding $300,000 to each of three named plaintiffs in race discrimination class action; the lead plaintiffs "took risks, bore hardships, and made sacrifices that absent class members did not").

*Second*, the proposed incentive awards are well in keeping with – indeed, far lower than – incentive awards that other courts have approved in class action settlements.  *See*, *e.g.*, *Cormier*, Case No. 1:13-cv-11822, docket no. 138 (incentive awards of $7,500 to each of two named plaintiffs); *Dvornikov*, Case No. 1:15-cv-13286, docket no. 86 (incentive awards of $10,000 to each of four named plaintiffs) *Godt v. Anthony's Pier Four, Inc.*, Suffolk Civ. A.

No. 07-3919 ($25,000 incentive payment for lead plaintiff); *Shea v. Weston Golf Club*, Middlesex Civ. A. No. 02-1826 (same); *Fernandez v. Four Seasons Hotel*, Suffolk Civ. A. No. 02-4689 (same); *Banks v. SBH Corp. (Grill 23)*, Suffolk Civ. A. No. 04-3515 (same). In fact, a 2006 study of incentive awards in class settlements found that the average incentive award approved by courts at that time was $15,992 – significantly more than the amounts sought by Plaintiffs here. *See* Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303, 1308 (2006).

*Third*, and finally, incentive awards serve an important role in employment class actions. The proposed recipients of the incentive awards put their name on the line for their coworkers in bringing this lawsuit. Such a decision is not without potential consequence for their future employment. As one court has observed: "[incentive] awards are particularly appropriate in the employment context [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers*." Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005); *see also Overka v. American Airlines, Inc.*, 265 F.R.D. 14, 24 (D. Mass. 2010) ("Courts have considered risk of reprisal by an employer as weighing in favor of [class] certification"); *Perez v. Safety-Kleen Systems, Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior because "some class members may fear reprisal"). For these reasons, Plaintiffs submit that the proposed allocation for incentive awards is fair and reasonable.

## C.    The proposed allocation for attorneys' fees is fair and reasonable.

The parties' agreement provides that Plaintiffs may seek up to one-third of the gross settlement fund as compensation for their attorneys' fees and costs. That proposed allocation

is fair and reasonable, and should be preliminarily approved by the Court. Plaintiffs signed contingency retainer agreements provided for a one-third fee award. The proposed notice will inform the settlement class members concerning this proposed allocation, as well.

Courts in Massachusetts have consistently approved a one-third allocation of attorneys' fees in cases involving wage and employment disputes, where the parties have reached a common fund settlement. *See Cormier*, Case No. 1:13-cv-11822, docket no. 138 (Burroughs, J.); *Dvornikov*, Case No. 1:15-cv-13286, docket no. 86 (Burroughs, J.); *Matamoros v. Starbucks Corp.*, Case No. 1:08-cv-10772, docket nos. 161, 167, 169 (Gorton, J.); *Awuah v. Coverall North America, Inc.*, Case No. 1:07-cv-10287, docket nos. 635, 640 (Young, J.); *Sennott v. Gordon Food Service, Inc.*, Case No. 1:14-cv-11402, docket no. 76 (Saylor, J.); *Hayes v. Aramark*, Case No. 1:08-cv-10700, docket no. 43 (Zobel, J.); *Cutter v. HealthMarkets, Inc.*, Case No. 1:10-cv-11488, docket nos. 77-80 (Tauro, J.); *Keily v. Trip Advisors, LLC*, Case No. 1:08-cv-11284, docket nos. 50, 52-53 (Wolf, J.).

Indeed, a 2010 survey of attorneys' fee awards analyzing class settlements approved by courts in the First Circuit between 1993 and 2002 ultimately found that courts approved wage and employment class settlements with fee provisions in the range of one-third. *See* Theodore Eisenberg & Geoffrey P. Miller, Attorneys' Fees & Expenses in Class Action Settlements: 1993–2008, J. of Empirical Legal Stud. 248 (2010). That survey found that in employment class settlements involving fee-shifting statutes (as is the case here), the approved median attorneys' fee award was 37.5 percent, while the mean attorneys' fee award was 31.8 percent, with a standard deviation of 21.7. *See id.* In addition to the data itself, the survey also found "[s]ubstantial empirical evidence … that a one-third fee is a common benchmark in private contingency fee cases," and that "fee requests falling within one

standard deviation above or below the mean should be viewed as generally reasonable and approved by the court unless reasons are shown to question the fee." *Id.* at 8, 38.

Public policy considerations also weigh in favor of the proposed one-third fee award based on the claimed portion of the gross settlement fund. The proposed award recognizes the vital role that contingency arrangements play in making capable and experience counsel available to individuals who cannot afford hourly fees – which is essentially everyone who is not independently wealthy. *See*, *e.g.*, *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013) ("Fee awards in wage and hour cases are meant to 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.' The FLSA and state wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights"), *quoting Sand v. Greenberg*, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010); *In re Giant Interactive Group Inc. Sec. Litigation*, 2011 WL 5244707, at *10 (S.D.N.Y. Nov. 2, 2011) ("[T]he Court finds [th]at public policy supports the award of a 33% fee in this case, the better to 'attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so'."), *quoting In re WorldCom, Inc. Securities Litigation*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005).

Particularly in the context of employment law, contingency arrangements are a necessity: absent such arrangements, very few workers could afford to pursue legal action against their employers, which would result in less robust enforcement of the wage laws and allow non-compliant employers to avoid liability for their misconduct.  As one district court has explained:

> Adequate compensation for attorneys who protect wage and hour rights
> furthers the remedial purposes of the FLSA. … Where relatively small
> claims can only be prosecuted through aggregate litigation, and the law relies on
> prosecution by "private attorney[s] general," *Deposit Guar. Nat'l Bank v.
> Roper*, 445 U.S. 326, 338-39, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980),
> attorneys who fill the private attorney general role must be adequately
> compensated for their efforts. … If not, wage and hour abuses would go
> without remedy because attorneys would be unwilling to take on the risk.

*Diaz*, 2011 WL 6399468, at *4 (citations omitted).

Lastly, a one-third fee award "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 188 (W.D.N.Y. 2005) (awarding 40 percent fee). Such an award recognizes that attorneys (like Plaintiffs' counsel) may spend years developing the case law in a particular field and obtaining favorable decisions, all of which contributes to early resolution of later cases. It further recognizes that attorneys who work on a contingency basis incur substantial risk in pursuing class litigation, since such cases can go on for years and can just as likely result in no recovery as they can result in a substantial settlement. *See In re Giant Interactive Group*, 2011 WL 5244707, at *10 (awarding one-third fee; "plaintiffs' counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the action; counsel also faced the responsibility of advancing litigation and overhead expenses on this case for nearly four years").

Although not required, courts in the First Circuit will sometimes conduct a "lodestar cross-check" in awarding attorneys' fees in a class settlement. *See In re Relafen*, 213 F.R.D. at 81; *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL 2408560, at *1 (D. Mass. Aug. 3, 2009) ("The lodestar approach … can be a check or

validation of the appropriateness of the percentage of funds fee, but is not necessary."),
*quoting In re Compact Disc*, 216 F.R.D. at 215-16; *Conley v. Sears, Roebuck & Co.*, 222
B.R. 181, 187 (D. Mass. 1998) (noting that lodestar method can be used to "double check"
the reasonableness of a fee). The "lodestar method requires the court to determine the number
of hours reasonably expended multiplied by a reasonable hourly rate for attorneys of similar
skill within that geographic area," and then to compare that figure to the total requested
award by dividing the requested award by the lodestar figure. *In re Relafen*, 231 F.R.D. at
77. Here, a lodestar cross-check would be premature because Plaintiffs are only seeking
preliminary approval, and their counsel will need to perform substantial additional work in
this matter prior to final approval. Accordingly, Plaintiffs will submit a lodestar cross-check
analysis with their forthcoming motion for final settlement approval.

## Conclusion

For all the reasons set forth above, Plaintiffs respectfully request that the Court grant
preliminary approval of the parties' proposed class action settlement, and enter the order
attached to this motion as Exhibit 4.

Respectfully submitted,
JOSHUA TOUSIGNANT and
HEATHER WELSCH, individually and on
behalf of all those similarly situated,

By their attorneys,


 /s/ Brant Casavant
Sergei Lemberg
  Admitted *pro hac vice*
LEMBERG LAW, L.L.C.
43 Danbury Road, 3rd Floor
Wilton, CT 06897
Tel.    (203) 653-2250
Fax.    (203) 653-3424
slemberg@lemberglaw.com

Hillary Schwab, BBO #666029
Brant Casavant, BBO #672614
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel.    (617) 607-3261
Fax.    (617) 488-2261
hillary@fairworklaw.com
brant@fairworklaw.com

## Certificate of Service

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non registered participants on June 24, 2019.

  /s/ Brant Casavant
Brant Casavant

## Certificate of Conference

I hereby certify that I conferred with counsel for the defendant by email on June 24, 2019, regarding this motion and the relief requested herein.  Defendant has stated that it assents.

  /s/ Brant Casavant
Brant Casavant